UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORGE FONSECA and REYES ANDON on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>DIRCKSEN & TALLEYRAND INC. d/b/a RIVER CAFÉ and MICHAEL "BUZZY" O'KEEFE,<br><br>Defendants. | Docket No.: 13-cv-05124 (AT) |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

**LITTLER MENDELSON, P.C.**

Craig R. Benson
Sarah E. Moss
900 Third Avenue
New York, New York 10022
(212) 583-9600

*Attorneys for Defendants*

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................2
STATEMENT OF FACTS .........................................................................................................3
ARGUMENT................................................................................................................................8
   I.    SUMMARY JUDGMENT STANDARD ........................................................................8
   II.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THE MAÎTRE Ds ARE NOT "EMPLOYERS" UNDER THE FLSA OR NYLL................................................9
      A.    Applicable Laws .........................................................................................................9
      B.    The Maître Ds Do Not Have the Power to Hire and Fire Employees...............................11
      C.    The Maître Ds Do Not Supervise and Control Employee Work Schedules or Conditions of Employment ...................................................................................................13
      D.    The Maître Ds Do Not Determine The Rate and Method of Plaintiffs' Payment ...........14
      E.    The Maître Ds Do Not Maintain Employment Records .....................................................14
   III.  THE MAÎTRE DS ARE TIPPED EMPLOYEES UNDER THE FLSA AND NYLL ...15
CONCLUSION............................................................................................................................16

# Table of Authorities

**Cases**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .................................................................................................. 8

Arencibia v. 2401 Rest. Corp.,
    831 F. Supp. 2d 164 (D.D.C. 2011) ................................................... 11, 12, 13, 15

Barenboim v. Starbucks Corp.,
    21 N.Y.3d 460 (2013) ............................................................................................ 10

Barenboim v. Starbucks Corp.,
    549 Fed.Appx. 1 (2d Cir. 2013) ............................................................................ 16

Barfield v. N.Y. City Health & Hosps. Corp.,
    537 F.3d 132 (2d Cir. 2008) .................................................................................. 15

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ................................................................................................ 8

Dole v. Continental Cuisine, Inc.,
    751 F. Supp. 799 (E.D. Ark. 1990) ................................................................. 11, 16

Herman v. RSR Sec. Servs.,
    172 F.3d 132 (2d Cir. 1999) .................................................................................. 10

Goenaga v. March of Dimes Birth Defects Found.,
    51 F.3d 14 (2d Cir. 1995) ........................................................................................ 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ................................................................................................ 8

Mendez v. Pizza on Stone, LLC,
    No. 11 Civ. 6316(DLC), 2012 WL 3133522 (S.D.N.Y. Aug. 1, 2012) ..... 11, 13, 14

Miano v. Homes Lines, Inc.,
    No. 85 Civ. 1579, 1987 WL 5798 (S.D.N.Y. Jan. 13, 1987) .................................. 8

Rudy v. Consol. Rest. Comps., Inc.,
    Civil Action No. 3:08-CV-0904-L (BF), 2010 WL 3565418 (N.D. Tex. Aug. 18, 2010) passim

Santos v. Murdock,

    243 F.3d 681 (2d Cir. 2001) .................................................................................................. 9

**Statutes**

28 C.F.R § 531.51 (2014) ............................................................................................................. 9

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (2014) .......................................................... 2

Fed. R. Civ. P. 56(c) .................................................................................................................... 8

New York Lab. Law § 196-d (McKinney 2014) .................................................................. 2, 10

Defendants Dircksen & Talleyrand, Inc. d/b/a the River Café and Michael O'Keeffe ("Defendants") respectfully submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment pursuant to Rule 56.1 of the Federal Rules of Civil Procedure ("Motion").

## **PRELIMINARY STATEMENT**

Plaintiffs are current and former employees of Defendants who worked as food service employees in the dining room of the River Café. They brought several claims against Defendants, including misappropriation of tips under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York Labor Law § 196-d ("NYLL"), on the theory that Defendants required the Plaintiffs to share their tips with tip-ineligible employees, including the restaurant's maître ds. That claim is the sole focus this Motion. Specifically, Defendants argue that the competent record evidence establishes, as a matter of law, that the maître ds are tip eligible employees, not employers, within the meaning of the FLSA and NYLL.

Tellingly, the "evidence" Plaintiffs will likely rely upon to oppose this Motion is made nearly uniformly on information and belief, rather than on personal knowledge. This "evidence" is little more than inadmissible hearsay and unsubstantiated beliefs, devoid of any substance or credibility. By contrast, Defendants' documentary and testimonial evidence establishes beyond dispute that the maître ds are no more than low-level supervisors who cannot be "employers" within the meaning of the FLSA or NYLL.

The record evidence demonstrates that the maître ds do not have any of the hallmarks of an employer under the FLSA or NYLL. Specifically, the maître ds do not have the power to hire and fire employees, do not exercise significant control over employees' schedules, nor do they set pay rates or maintain employment records. In fact, the evidence demonstrates that:

- At all times material to this action, the River Café was headed by a general manager, Scott Stamford, who made all hiring, firing decisions, disciplinary, and promotional decisions;

2

- Plaintiffs' lack any personal knowledge as to who made hiring, firing, promotional, and disciplinary decisions at the River Café, and are thus unable to refute Defendants' testimony on these issues;

- The maître ds have no more input into hiring and firing decisions that other dining room employees, including Plaintiffs;

- The maître ds' position is similar to captains (a position included within the Plaintiffs' FLSA collective and proposed NYLL class);

- The maître ds' job duties are primary direct customer service; and

- The maître ds do not maintain any employment records or set pay rates.

For these reasons, as set forth more fully below, Defendants' respectfully request that summary judgment be granted in their favor on the question of whether the River Café's maître ds are "employers" under the FLSA and NYLL.

## STATEMENT OF FACTS[1]

**The River Café**

The River Café ("River Café" or "Restaurant") is a restaurant located on the East River in Brooklyn, New York, with a view of Manhattan's eastern skyline. (Defs' 56.1 ¶ 1.) It is owned by Dircksen & Talleyrand and has been open since 1974. (Id. at ¶ 2.) Until October 2012, was open for lunch and dinner, Monday through Saturday, as well as for brunch and dinner on Sunday. (Id. at ¶¶ 5, 8.)

**Michael O'Keeffe**

Michael O'Keeffe is the primary owner of Dircksen & Talleyrand. (Id. at ¶ 3.) He is present in the River Café every day, spending up to 14 hours per day at the Restaurant. (Id. at ¶¶ 16-17.) When he is in the Restaurant, Mr. O'Keeffe runs the restaurant, including providing instructions to

---

[1] For a full recitation of the background facts, please see Defendants' 56.1 Statement in Support of Motion for Partial Summary Judgment ("Defs' 56.1"). Defs' 56.1 has been updated to include exhibit citations.

3

the general manager, maître ds, captains, and other members of the Restaurant's wait staff. (Id. at ¶¶ 15, 18-21.) Mr. O'Keeffe also disciplines Restaurant employees, such as suspending employees, sending them home early, and reprimanding them. (Id. at ¶ 23.) For example, Plaintiff Jorge Fonseca testified that Mr. O'Keeffe reprimanded an employee because the employee's bow tie was loose, his shirt was unbuttoned, and his shirt was too tight. (Id.)

**Scott Stamford**

Scott Stamford is the general manger of the River Café. (Id. ¶ 24.) Mr. Stamford began working at the River Café as a valet in 1977; a few years later he was promoted to the bartender position. (Id. ¶ 26-28.) After working as a bartender for ten years, Mr. Stamford was promoted by Mr. O'Keeffe to the general manager position. (Id. at ¶¶ 29-30). As the general manager, Mr. Stamford is the highest-ranking employee at the River Café under Mr. O'Keeffe. (Id. ¶ 31.)

Mr. Stamford's managerial duties include hiring, supervising, overseeing the a la carte department, overseeing the banquet department, and maintaining the restaurant's point of sale system. (Id. at ¶ 32). Mr. Stamford is present in the restaurant during nearly all of its open hours. During the week, he is in the River Café from 9:00 a.m. to 7:00-8:00 p.m., while on Saturdays, he is in the River Café from 9:00 a.m. until the restaurant closes. (Id. at ¶¶ 33-24.) Mr. Stamford spends approximately 10% of his time in his office, which is located in the Restaurant's kitchen, and approximately 90% of his time in all other areas of the restaurant. (Id. ¶ 35.)

In addition to Mr. Stamford, since the summer of 2011, the Restaurant has had an assistant manager named Teddy Dearie. (Id. ¶ 36.) Mr. Dearie is in charge of the River Café when Mr. Stamford is not present. (Id. ¶ 37.) Prior to Mr. Dearie's employment at the River Café, the Restaurant's head chef was in charge of the restaurant when Mr. Stamford was not present. (Id. at ¶ 38.)

**The River Café's Wait Staff**

The River Café's dining room wait staff is comprised of maître ds, captains, front waiters, back waiters, and bussers. (Id. ¶ 39.) Captains' job duties include supervising the waiters and bussers, explaining the menu to guests, taking the guests' food orders, and ensuring that the tables have menus, bread, water, cocktails, and wine. (Id. ¶ 45.) Front waiters' job duties include taking drink orders, taking dessert orders, assisting the captain with his duties, coordinating with back waiters, sometimes bringing food to the table, marking the table for each course, helping clear the table, taking care of special requests, and maintaining the table. (Id. ¶ 46.) The back waiters' job duty is to run food from the kitchen to the dining room, (id. ¶ 47), while the bussers' job duties include clearing the table, crumbing the table, bringing bread to the table, and helping the waiter mark the table, and cleaning the table and resetting the tables, (id. ¶ 50).

Plaintiffs have testified that there is a hierarchy among the positions in each section, with the captain at the top of the hierarchy, the front waiters in the middle, and the bussers at the bottom. (Id. ¶ 40.) For example, Plaintiff Stephane Filippi testified that when a busser did not perform a task, Mr. Filipii would bring it to the busser's attention and tell the busser what his tasks were. (Id. ¶ 41.) As another example, Plaintiff Geoffrey Schuppert testified that he would correct bussers if they made a mistake, such as failing to refill a guest's water, or instruct a busser to bus a table. (Id. ¶ 42.) Mr. Schuppert also testified that he would correct mistakes made by front waiters. (Id. ¶ 43.)

**Maître Ds at the River Café**

The primary maître ds who worked at the River Café during the relevant time frame were Javier Rodriguez, Patrick Goupit, Tom Hintz, and Josh Brown, (id. ¶ 55), although on occasion other people would fill in as maître ds, (id. ¶ 56.)

When the River Café is open, the maître ds stand by the hostess podium, located in the dining room, to greet guests as soon as they walk into the restaurant. (Id. ¶ 52.) The maître d's' job

duties include greeting every table that has a reservation, seating guests, seeing if guests have any special needs (such as wheelchairs), checking on guests during their meal, making sure the customer is happy, accommodating guests requests, handing menus to guests, deciding here guests would be seated, organizing dining room seating, transferring checks from the bar to a table, and making the front of house schedule. (Id. ¶¶ 51,53.)

Maître ds can also "comp" items on a guest's check. In order to "comp" an item, a card or code has to be used. (Id. ¶ 59.) The maître ds have the card while they are working, and give it to the closing captain when they leave the Restaurant. (Id. ¶ 60.) For example, Plaintiff Schuppert has used the card to void items and had the ability to use the card to "comp" items; he was not required to check with anyone, including a maître d, before using the card to void or "comp" items. (Id. ¶¶ 61-63).

In addition to providing direct customer service, maître ds would facilitate the scheduling of the wait staff. For example, when a member of the wait staff requested a vacation day, the maître ds would schedule the remaining personnel based on seniority. (Id. ¶ 57.) As another example, the maître ds would memorialize the holiday schedule selected by the wait staff, who would pick holidays to work based on seniority. (Id. ¶ 58.)

**Personnel Decisions at the River Café**

*Hiring Decisions*

Mr. Stamford conducts all of the hiring, including interviewing candidates from front of house positions and making the decision to hire or not to hire each candidate. (Id. ¶ 68.) The maître ds are not permitted to hire employees. (Id. ¶ 69.) As part of the hiring process, Mr. Stamford receives resumes from candidates and recommendations directly from members of the wait staff, (id. ¶ 70); any member of the wait staff, including maître d's, captains, waiters, and bussers can recommend a candidate for hire (id. ¶ 71). Based on a candidate's resume, Mr. Stamford decides

6

whether the interview the candidate. (Id. ¶ 72). Except in rare circumstances, such as when a candidate's primary language is not English, Mr. Stamford interviews all candidates. (Id. ¶¶ 73-74.) For example, when a candidate listed Portuguese on his or her resume, Mr. Stamford asks a Portuguese-speaking captain to speak with the candidate to confirm his or her proficiency. (Id. ¶ 76.) After the interview, Mr. Stamford decides whether to offer the candidate a trial period at the River Café. (Id. ¶ 77.) During the trial period, Mr. Stamford speaks with members of the wait staff, usually the captain, about the candidate and whether he or she is qualified for the position. (Id. ¶ 79). At the end of the trial period, Mr. Stamford decides whether to hire the candidate. (Id. ¶ 80.) This decision is based on feedback that Mr. Stamford receives from the captain, waiters, and maître ds. (Id. ¶ 81.) Mr. Stamford has never hired someone exclusively based on the recommendation of a maître d. (Id. ¶ 82.) Mr. Stamford usually communicates the hiring decision directly to candidates, but may ask another employee to communicate the decision when the candidate's primary language is not English. (Id. ¶ 84.)

*Promotion Decisions*

Mr. Stamford decides whether to promote someone after discussing it with members of the wait staff, including captains and maître ds. (Id. ¶¶ 85-87.)

*Termination Decisions*

Although the River Café's policy is to discipline people rather than terminate them, when termination is necessary, the procedure is for Mr. O'Keeffe and Mr. Stamford to discuss the employee's job performance. (Id. ¶¶ 88-89.) Mr. O'Keeffe and Mr. Stamford make all termination decisions for the wait staff at the River Café; maître ds are not permitted to terminate employees. (Id. ¶¶ 90-91.)

**The River Café's Tip Pool**

There is a tip pool at the River Café, which was created by the Restaurant's wait staff; Mr.

7

O'Keeffe did not participate in its creation. (Id. ¶¶ 95-96, 99.) Tip pool participants include the maître d's, captains, front and back waiters, busser, and bartenders. (Id. ¶ 100.) The Restaurant's wait staff made the decision to include the maître ds in the tip pool. (Id. ¶ 98.) The maître ds receive tips directly from the customers, which they contribute to the tip pool. (Id. ¶¶ 106-07.)

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A fact is "material" if it might reasonably affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The non-moving party has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Specifically, a party opposing summary judgment "must give some affirmative indication that her version of the facts is not fanciful." Miano v. Homes Lines, Inc., No. 85 Civ. 1579, 1987 WL 5798, at * 2 (S.D.N.Y. Jan. 13, 1987) (refusing to credit affidavits containing statements not made on personal knowledge). A plaintiff cannot defeat summary judgment by ignoring or misstating the record, or by relying on "unsupported [factual] assertions . . . conjecture or surmise." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Nor can a plaintiff defeat summary judgment by relying on inadmissible hearsay. See Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.").

## II. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THE MAÎTRE Ds ARE NOT "EMPLOYERS" OR AGENTS THEREOF UNDER THE FLSA OR NYLL

### A. Applicable Laws

Plaintiffs have asserted two claims which depend upon the maître ds being "employers" or agents thereof under the FLSA NYLL. Specifically, Plaintiffs claim that Defendants violated the FLSA and NYLL by permitting the maître ds to participate in the River Café's tip pool. (See Benson Dec. Ex. 1, ¶¶ 27-28.)

The FLSA permits restaurant employees to pool tips, but forbids restaurants from taking the "tip credit" against their tipped employees' wages when the tipped employees are required to share their tips with tip-ineligible employees. 29 U.S.C. § 203(m); 28 C.F.R § 531.51. Here, Plaintiffs claim that the maître ds are tip-ineligible managers. (Id. ¶ 28.)

Similarly, the NYLL provides, in relevant part:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.... Nothing in this subdivision shall be construed as affecting the ... sharing of tips by a waiter with a busboy or similar employee.

NYLL § 196-d. Thus, in order to prevail on a claim for misappropriated gratuities under either law, Plaintiffs must demonstrate that their tips were demanded or accepted, directly or indirectly, by their employer or its agent.

In order to prevail, Plaintiffs must demonstrate that the maître ds are "employers" within the meaning of the FLSA and NYLL.[2] See Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999)

---

[2] As this Court has previously noted, "the New York Court of Appeals has not answered the question of whether the employer test under the NYLL is the same as under the FLSA." Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 134 (S.D.N.Y. 2014). However, "[d]istrict courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA." Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (citations and internal quotation marks omitted). Thus, this Court should analyze whether the individual Defendants qualify as "employers" under the FLSA and NYLL together, using the FLSA standard, because

9

("To be . . . liable under the FLSA, a person must be an 'employer.'") To be an "employer" under the FLSA is to be <u>personally</u> <u>liable</u> for the unpaid or deficient wages of other employees and requires a showing that the person "possessed the power to control [the] workers in question. <u>Id</u>. The Second Circuit has identified four factors, collectively referred to as the economic realities test, for courts to consider when determining whether an alleged employer possesses the requisite power. <u>Id</u>. The four factors that courts consider are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Id</u>.

In light of the consequences of being an "employer," courts have, understandably, refused to apply this label to low-level supervisors such as maître ds. Indeed, this standard was adopted by the New York Court of Appeals in <u>Barenboim v. Starbucks Corp.</u>, 21 N.Y.3d 460, 473 (2013) ("an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip-allocation arrangement under Labor Law § 196-d, <u>even if that employee possesses limited supervisory responsibilities</u>.") (emphasis added). <u>See</u> <u>also</u> <u>Mendez v. Pizza on Stone, LLC</u>, No. 11 Civ. 6316(DLC), 2012 WL 3133522, at *2 (S.D.N.Y. Aug. 1, 2012) (assisting in hiring process, communicating management policies on wages and hours to employees, and exercising delegated authority in setting work schedules insufficient to create question of material fact as to whether individual defendants were employers under the economic realities test); <u>Rudy v. Consol. Rest. Comps., Inc.</u>, Civil Action No. 3:08-CV-0904-L (BF), 2010 WL 3565418, at *4 (N.D. Tex. Aug. 18, 2010) (holding that even if a maître d was a low-level manager, she was not an "employer" under the FLSA); <u>Arencibia v. 2401 Rest. Corp.</u>, 831 F. Supp. 2d 164 (D.D.C. 2011) (maître ds were not employers under the FLSA because they did not have the authority to hire, fire,

---

"any difference [between the two definitions] would be immaterial to the facts of this case." <u>Kalloo v. Unlimited Mech. Co. of N.Y.</u>, 977 F. Supp. 2d 187, 200 (E.D.N.Y.2013).

10

or discipline without prior authorization, had little discretion in setting the work schedule, did not set employees' pay rates, and did not maintain employment records); Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 802 (E.D. Ark. 1990) (finding maître ds tip eligible and rejecting argument that "any person who has any supervisory duties over other employees, no matter how minimal, becomes an 'employer' within the meaning of the Fair Labor Standards Act"). Thus, to be deemed an "employer" under the FLSA and NYLL, Plaintiffs must provide far more than hearsay statements and allegations made without personal knowledge as to the power allegedly wielded by particular individuals.

As demonstrated below, the undisputed evidence demonstrates that the maître ds are no more than low-level supervisors who are not "employers" under the FLSA or NYLL, and Defendants are entitled to summary judgment on this issue.

**B.     The Maître Ds Do Not Have the Power to Hire and Fire Employees**

There is no genuine dispute that the River Café's maître ds lack the power to hire and fire employees. Rather, it is undisputed that River Café's General Manager and Owner have the final authority as to hiring and firing of front-of-house staff at the River Café. (Defs' 56.1 ¶¶68, 69, 85, 90, and 91.)

Plaintiffs will attempt to create a genuine dispute through testimony as to their belief that they or their colleagues were hired by the maître ds. This is insufficient to create such dispute. See Arencibia, 831 F. Supp. at 176 (the plaintiffs' testimony that they "perceived [the maître d] to have hired them . . . does not create a genuine dispute"); see also Rudy, 2010 WL 3565418, at *6-7 (plaintiffs' statements of personal knowledge that the maître ds hired and fired front of house employees was hearsay and/or not based on personal knowledge, and thus not competent summary judgment evidence).

In Rudy, the plaintiffs contended that the maître ds hired new employees; however, they

11

failed to provide any competent evidence demonstrating the basis of their personal knowledge. Id. at *6. For example, Rudy himself admitted that "he had no way of knowing the interaction between the maître d's and the proprietor/general manager." Id. Similarly, here, each deposed Plaintiff testified that he had no personal knowledge regarding who made the ultimate hiring, promotional and/or firing decisions at the River Café. (Defs' 56.1 ¶¶118-123; 131; 134; 141-149;152-155.)[3] Thus, the only competent evidence establishes that no maître d had the ability to hire or fire anyone at the River Café, weighing against a finding that the maître ds are "employers" within the meaning of the FLSA.

Even assuming as true Plaintiffs' allegations that one or both of the maître ds participated in the interview process, such allegations are insufficient to establish that a maître d had hiring authority within the meaning of the FLSA. Addressing this question squarely, the Arencibia court determined that simply being involved in the hiring process – such as interviewing candidates and making recommendations to the general manager – does not make someone an employer. Arencibia, 831 F. Supp. at 176; see also Mendez, 2012 WL 3133522, at *2 (plaintiff's testimony that he was interviewed by individual defendants prior to being hired insufficient to demonstrate individual defendants' had hire and fire authority). Furthermore, even if a hiring or firing decision was communicated through a maître d, that still would not suffice to show that the maître ds had hiring or firing authority under the FLSA. See Arencibia, 831 F. Supp. at 176 (maître d did not have hiring or firing authority where final decision made by the general manager, even if the decision was carried out by the maître d).

The only evidence in the record supported by personal knowledge regarding hiring and firing at the River Café demonstrates that, as a matter of law, the maître ds did not have the ability to hire

---

[3] To the extent that Plaintiffs attempt to change their deposition testimony through the use of affidavits, such attempt should not be permitted. It is well-settled in the Second Circuit that a party's affidavit that contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment. Shepard v. Frontier Commc'ns Servs., Inc., 92 F. Supp. 2d 279, 290 (S.D.N.Y. 2000)

12

or fire employees at the River Café. For this reason, the Court must find that this factor weighs against finding that the maître ds are "employers" under the FLSA and NYLL.

### C. The Maître Ds Do Not Supervise and Control Employee Work Schedules or Conditions of Employment

There is no genuine dispute that the River Café's maître ds lack significant or meaningful control over employees' work schedules and/or conditions of employment. In fact, it is clear from the uncontroverted testimony of Mr. Stamford that the maître ds' ability to make scheduling decisions was limited and mainly clerical in nature. For example, Mr. Stamford testified that when a member of the wait staff requested a vacation day, the maître ds would schedule the other wait staff based on seniority. (Defs. 56.1 ¶57.) As another example, Plaintiff Fonseca testified that the River Café had a system whereby the wait staff would pick holidays to work based on seniority. (Id. at ¶58.) The maître ds' exercise of delegated authority in making schedules is insufficient to transform the maître ds into "employers" under the FLSA and NYLL. See, e.g., Mendez, 2012 WL 3133522, at *2 (exercising delegated authority in setting employee work schedules insufficient to render individual defendants "employers" under the economic realities test). Thus, the record evidence demonstrates that even if the maître ds were responsible for scheduling the waitstaff, such responsibility was mainly clerical and lacking in significant discretion.

Plaintiffs may attempt to argue that they allege that they and their colleagues have been removed from the schedule or sent home for the day by one of the maître ds in retaliation for making a mistake or violating one of the River Café's rules. However, this would still be insufficient to create a material issue of fact as to whether the maître ds are "employers" under the relevant laws because Plaintiffs lack personal knowledge as to whether the maître ds were authorized to send employees home. (Defs' 56.1 ¶ 123.) Indeed, even if the maître ds had "unfettered control" over Plaintiffs' work schedules, this factor should weigh "if at all, only slightly" in favor of the maître ds being employers because making schedules does not affect the River Café's compliance or non-

13

compliance with the FLSA.  See Rudy, 2010 WL 3565418, at *7.

        **D.**       **The Maître Ds Do Not Determine The Rate and Method of Plaintiffs' Payment**

There is no genuine dispute that the maître ds do not determine or set the rate and method of Plaintiffs' payment.  First, there is no dispute that the maître ds have no role in the collection or distribution of tips at the River Café.  (Defs' 56.1 ¶¶101-104.)  Second, there is no dispute that the maître ds have no role in notifying employees of their wage rates.  (Id. at ¶¶157-58.)  Third, there is no dispute that the maître ds did not create the tip pool or decide how the tip pool was to be distributed. (Id. at ¶¶96-99.) All of these weigh against a finding that the maître ds are "employers" within the meaning of the FLSA and NYLL. See Rudy, 2010 WL 3565418, at *7-8 (determination that the maître ds did not set servers' pay rate or method of payment weighed against finding the maître ds were employers); Arencibia, 831 F. Supp. at 177 (finding maître ds were not employers, in part because they did not set the rate or determine the method of payment for the defendant-restaurant's employees).

There can be no dispute that the maître ds played no role in determining the rate and method of Plaintiffs' payment (of both wages and tips), and thus this factor must weigh against finding the maître ds are "employers" under the FLSA and NYLL.

        **E.**       **The Maître Ds Do Not Maintain Employment Records**

There is also no genuine dispute that the maître ds do not maintain employment records. "Employment records" include those concerning "hours worked." Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 144 (2d Cir. 2008). For example, the record shows that Defendants' Payroll and HR Manager was responsible for payroll for the Plaintiffs (Defs' 56.1 ¶64), including implementing changes in the Plaintiff' method and rate of payment (id. at ¶67).  To the extent that the maître ds maintain schedules of the front of house staff, such maintenance is merely clerical and insufficient to sway this factor in favor of finding the maître ds are employers. See Rudy, 2010 WL

3565418, at *8 (the maître d's involvement with employment records was merely clerical, weighing against a finding that they were employers); Arencibia, 831 F. Supp. at 177 (did not maintain employment records within the meaning of the FLSA, despite noting who was present on any given day). This factor weighs against finding the maître ds are "employers" under the FLSA and NYLL.

### III.   THE MAÎTRE DS ARE TIPPED EMPLOYEES UNDER THE FLSA AND NYLL

Summary judgment is also appropriate for Defendants because it is undisputed that the maître ds spend most of their work day engaged in providing direct customer service of the type commonly found to be tip-eligible. As a preliminary matter, Plaintiffs have only alleged that the maître ds are ineligible to receive tips due to their alleged "managerial control over the wait staff at [the] River Café." (Ex. 1, ¶ 28.) Thus, if this Court finds that the maître ds lack the requisite "managerial control," there is no basis on which Plaintiffs can continue to pursue a claim based on the tip ineligibility of the maître ds. In any event, the maître ds provide direct customer service and should be deemed tip eligible employees under the FLSA and NYLL.

At the River Café, the maître ds' job duties include greeting guests, seating guests, seeing if guests have any special needs, checking on guests during their meal, making sure the customer is happy, accommodating guests requests, handing menus to guests, deciding here guests would be seated, organizing dining room seating, and transferring checks from the bar to a table. (Defs' 56.1 ¶ 51.) They are located on the dining room floor during service, greet guests as soon as they walk into the restaurant, and bring guests to their tables. (Id. at ¶¶ 52-53.) These are precisely the types of job duties that other courts have relied upon to hold that maître ds are tip-eligible. See, e.g., Rudy, 2010 WL 3565418, at *4 (assuring the tables were set in accordance with guest requests, serving food and drinks to tables, greeting customers, checking on tables, and performing table visits if a guest had a problem or question during the dinner service rendered maître ds tip eligible employees); Dole, 751 F. Supp. at 800-01 (maître d whose duties included setting up the dining

15

room prior to opening, greeting and seating customers as they arrive, describing specials, and assisting waiters and waitresses, as needed, in serving the customers was tip eligible).

Barenboim v. Starbucks Corp., 549 Fed.Appx. 1 (2d Cir. 2013) provides further clarity on this issue. There, the Second Circuit affirmed that Starbucks' shift supervisors were tip eligible employees because, even though they lad supervisory duties, their "'principal' responsibilities [were] to provide 'personal service to patrons." Id. at 3. Even though the shift supervisors had the ability to assign workers to particular positions during their shifts, administer break periods, direct the flow of customers, change cash register tills, and deposit money in the bank, these duties were insufficient to constitute significant authority over the plaintiffs, and thus the shift supervisors were tip eligible. Id.

Similarly, here Plaintiffs may rely upon allegations that the maître ds assign wait staff to particular locations of the restaurant during shifts, assign patrons to particular tables (thereby directing the flow of customers), create the wait staffs' schedule, including breaks. However, as Barenboim demonstrates, these low-level supervisory duties are insufficient to render the maître ds ineligible to receive tips.

## CONCLUSION

As detailed above, maître ds at the River Cafe cannot hire and fire employees, nor do they make other personnel decisions, set employee wage rates, or maintain employment records. For these reasons, the maître ds lack any meaningful authority with respect to the terms and conditions of Plaintiffs' employment and cannot be considered "employers" within the meaning of the FLSA or NYLL. Moreover, because they provide direct customer service, they should be considered "tip eligible" employees under both federal and state law, and therefore lawful participants in the River Café's tip pool. Thus, summary judgment on this issue should be granted to Defendants.

Dated: October 1, 2014
       New York, New York

/s/ Craig R. Benson
Craig R. Benson (cbenson@littler.com)
Sarah E. Moss (smoss@littler.com)
LITTLER MENDELSON
  A Professional Corporation
900 Third Avenue
New York, NY  10022.3298
212.583.9600

Attorneys for Defendants