UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORGE FONSECA and REYES ANDON, on behalf of themselves and others similarly situated, | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 9/28/15 |

Plaintiffs,

-against-                                                   13 Civ. 5124 (AT)

DIRCKSEN & TALLEYRAND INC. d/b/a RIVER            **MEMORANDUM**
CAFÉ and MICHAEL "BUZZY" O'KEEFE,                  **AND ORDER**

Defendants.

ANALISA TORRES, District Judge:

In this wage and hour action, Plaintiffs, Jorge Fonseca and Reyes Andon, on behalf of

themselves and others similarly situated, allege that Defendants, Dircksen & Talleyrand Inc.

d/b/a River Café and Michael "Buzzy" O'Keeffe,[1] violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.* and

§ 196-d. Specifically, Plaintiffs claim that Defendants failed to: (1) properly distribute

Plaintiffs' tips, (2) pay Plaintiffs for all hours worked, and (3) prior to 2011, comply with legally

mandated tip-credit requirements. Plaintiffs move for class certification under Federal Rule of

Civil Procedure 23. Defendants move for partial summary judgment pursuant to Federal Rule of

Civil Procedure 56. For the reasons stated below, Plaintiffs' motion is GRANTED, and

Defendants' motion is DENIED.

## BACKGROUND

The River Café is a Brooklyn restaurant that overlooks the East River and the Manhattan

skyline. Def 56.1. ¶ 1, ECF No. 83. In October 2012, the restaurant closed due to damage

caused by Hurricane Sandy, *id.* ¶ 6, but recently reopened for limited public dining, *id.* ¶ 7.

---

[1] Although "O'Keefe" is named as a Defendant in the complaint, *see* Compl., ECF No. 1, the parties' subsequent
submissions reveal that the correct spelling of the name is "O'Keeffe," *see, e.g.*, Pl. 56.1, ECF No. 88-18; Def 56.1.,
ECF No. 83.

Defendants own and operate the River Café. *Id*. ¶¶ 2-3, 5. Plaintiffs are former employees who worked as servers until the restaurant closed in October 2012. *Id*. ¶¶ 130, 132-33, 150-51.

On July 23, 2013, Plaintiffs commenced this action on behalf of all captains, front-waiters, back-waiters, bussers, bartenders, and barbacks who worked at the River Café in the six years prior to the filing of the lawsuit. Compl., ECF No. 1; *see also* Pl. Class Cert. Mem. 8, 10, ECF No. 70. According to Plaintiffs, Defendants required all tipped employees to participate in a tip pool, where gratuities were pooled together and then distributed based on a "points system." *See* Fonseca Decl. ¶ 7, ECF No. 74; Andon Decl. ¶ 10, ECF No. 78. The tip pool included maître d's, whom Plaintiffs characterize as managers, as they purportedly had the ability to hire, fire, and discipline employees. *See* Fonseca Decl. ¶¶ 12, 14-15, 19; Andon Decl. ¶¶ 13-15, 17-20, 23-25. In addition, the maître d's allegedly controlled employees' work schedules. *See* Fonseca Decl. ¶¶ 18, 20-21; Andon Decl. ¶¶ 22, 26-28. The tip pool also included "polishers" and expeditors/back-waiters—positions that, according to Plaintiffs, required no direct customer service. *See* Fonseca Decl. ¶¶ 26-35; Andon Decl. ¶¶ 32-36. Finally, Plaintiffs claim that Defendants calculated Plaintiffs' hours based on a fixed number of hours for each shift worked instead of by actual hours worked. *See* Fonseca Decl. ¶¶ 3-6; Andon Decl. ¶¶ 3-9.

On April 11, 2014, the Court conditionally certified a collective action under 29 U.S.C. § 216(b). *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124, 2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014). Plaintiffs now move for class certification. Pl. Class Cert. Mem. Defendants, in turn, move for partial summary judgment on one issue: whether the River Café's maître d's were "employers / managers" under the FLSA and the NYLL and, therefore, tip-ineligible. Def. Summ. J. Mem. 5, ECF No. 82.

# DISCUSSION

I.    Class Certification of the NYLL Claims

A.  Legal Standard

For a matter to proceed as a class action, a plaintiff must satisfy the following prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to satisfying the Rule 23(a) prerequisites, the plaintiff must qualify the proposed class under one of three subsection Rule 23(b) categories. Fed. R. Civ. P. 23(b); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Rule 23(b)(3)—the provision under which Plaintiffs move, *see* Pl. Class Cert. Mem. 29—is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication, *see* Fed. R. Civ. P. 23(b)(3).

Although the certifying court must resolve factual disputes relevant to satisfying each Rule 23 requirement, the court "should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). The party seeking class certification bears the burden of satisfying Rule 23's prerequisites by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

B.  Application

Here, Plaintiffs move for certification of: (1) a class of all the River Café employees who worked as captains, front-waiters, and bartenders, as well as employees who formerly worked as back-waiters and bussers, from July 23, 2007 until the present; and (2) a subclass of all the River Café employees who worked as captains, front-waiters, back-waiters, bartenders, and bussers from July 23, 2007 to December 31, 2010—and who did not receive paychecks that complied with NYLL tip credit regulations. *See* Pl. Class Cert. Mem. 9, 21. For the reasons that follow, both requests are GRANTED.

1. Rule 23(a) Requirements

    a. Numerosity—Rule 23(a)(1)

Under Rule 23(a)(1), numerosity is presumed where a putative class has 40 or more members. *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011). Plaintiffs assert—and Defendants do not dispute—that "based on the list of [t]ipped [e]mployees who worked at the River Café from April 11, 2008 until April 11, 2014 . . . there are more than 180 potential [c]lass [m]embers." Pl. Class Cert. Mem. 22. Numerosity, therefore, is satisfied. *See Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707, 2010 WL 2926196, at *3 (S.D.N.Y. July 22, 2010) (concluding that numerosity was satisfied on the basis of undisputed representations that the class was sufficiently large).[2]

    b. Commonality—Rule 23(a)(2)

"The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (internal quotation marks and citation omitted). "[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to

---

[2] Plaintiffs do not specify how many members comprise the subclass. Nonetheless, Defendants do not challenge the subclass's numerosity. The Court thus presumes that the subclass, too, is sufficiently numerous.

meet the commonality prerequisite for class certification." *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

Plaintiffs identify eight questions common to the class: (1) whether Defendants employed the class members under New York law; (2) what are/were the policies, practices, and procedures regarding the handling and distribution of gratuities received by the class members; (3) whether Defendants illegally required class members to distribute a portion of their tips to managers; (4) whether Defendants illegally required class members to distribute a portion of their tips to non-service employees; (5) whether employees acting as maître d's were legally permitted to receive a portion of the tips received by class members; (6) whether employees acting as expediters were legally permitted to receive a portion of the gratuities received by class members; (7) whether employees acting as "polishers" were legally permitted to receive a portion of the tips received by class members; and (8) whether Defendants illegally paid tipped employees for fewer hours than they worked. *See* Pl. Class Cert. Mem. 24. In addition, Plaintiffs identify one question common to the subclass: whether, prior to 2011, Defendants illegally took the tip credit for tipped employees' wages, in violation of New York's minimum wage and/or overtime law requirements. *Id.* These common questions satisfy Rule 23(a)(2). *See Shahriar*, 659 F.3d at 252 (concluding that commonality was met because plaintiffs' "NYLL class claims all derive from the same compensation policies and tipping practices," and "the class plaintiffs' claims arise under the same New York State statutes and regulations").

Defendants attempt to defeat commonality by arguing that Plaintiffs' testimony establishes that the answers to the common questions vary "significantly from position to position, person to person, day to day, shift to shift, and customer by customer." Def. Opp. Mem. 12, ECF No. 89. Not so. Here, liability can be determined on a classwide basis.

Plaintiffs' claims depend on common contentions, namely that Defendants: (1) required tipped employees to share their tips with ineligible employees; (2) failed to pay tipped employees for all hours worked, including overtime; and (3) prior to 2011, failed to provide the class members with written notices required by the NYLL. These contentions are "capable of classwide resolution" as their "truth or falsity will resolve [the] issue[s] . . . in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (holding that the focus of the commonality requirement "is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation").

Defendants' argument that the job duties and the projected shift hours differ among the various types of tipped employees "boils down to a concern that damages among class members will differ." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011). And, "because commonality does not mean that all issues must be identical as to each member, the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement." *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 448 (S.D.N.Y. 2010) (internal quotation marks and citations omitted); *see also Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711, at *8 (E.D.N.Y. Apr. 2, 2012) ("While damages owed to each employee will require individual determinations, this computation issue does not destroy commonality."); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class members make identical claims and arguments[.]").

Accordingly, the commonality requirement is met.

c.   Typicality—Rule 23(a)(3)

6

Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (internal quotation marks and citation omitted). This factor "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Whitehorn*, 275 F.R.D. at 199 (internal quotation marks and citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted). "As long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).

Here, the alleged harms suffered by Plaintiffs are typical of those of the class they seek to represent. All putative class members were employed by Defendants as tipped, front-of-house employees. In the course of their employment, Plaintiffs and class members were allegedly:  (1) denied tips that they were entitled to receive because they were required to share their gratuities with tip-ineligible employees, and (2) not paid for all hours worked. *See Shahriar*, 659 F.3d at 252 (finding typicality satisfied where "all [c]lass [m]embers were subject to the same tipping policies"); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality and typicality met where all class members were subject to the same policies regarding their employers' distribution of a service charge).  Likewise, the putative subclass members purportedly did not receive the requisite wage statements under the NYLL and, thus, were

7

entitled to be paid the full minimum wage.

On this record, Plaintiffs have satisfied the typicality requirement.

d.   Adequacy—Rule 23(a)(4)

Finally, Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253.

Here, the Court finds that the named Plaintiffs are fully prepared to act as class representatives and prosecute the case, have no conflict with any class members,[3] and will fairly and adequately protect the interests of the class. *See* Nussbaum Decl. ¶¶ 10-11, ECF No. 80; *see generally* Fonseca Decl.; Andon Decl.; *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").

Rule 23(a)(4)'s criteria, therefore, are met.

e.   Rule 23(a)'s "Implied" Requirement

Although it is not explicitly spelled out in Rule 23(a), "[t]here is an implied requirement that the membership of the class [be] identifiable and ascertainable." *Flores*, 284 F.R.D. at 121 (internal quotation marks and citation omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

---

[3] This assumes that "current bussers[,] who rotate into the polisher position[,] and current front-of-house servers[,] who rotate into the expeditor/back-waiter position," will be excluded from the class. *Fonseca*, 2014 WL 1487279, at *2. As the Court previously determined, however, "former bussers and servers have no conflict of interest." *Id.*

8

Here, the proposed class is easily identifiable from Defendants' records: all tipped employees who worked at the River Café throughout the class period, excluding maître d's, current bussers, and current back-waiters. The proposed subclass, too, is readily identifiable: all tipped employees, excluding maître d's, who worked at the River Café during the subclass period.

2.  Rule 23(b)(3) Requirements

a.  Predominance—Rule 23(b)(3)

"[W]hen determining whether common issues predominate, courts focus on the liability issue[,] and if the liability issue is common to the class, common questions . . . predominate over individual ones." *Bolanos*, 212 F.R.D. at 157-58 (internal quotation marks and citation omitted). "Although predominance is a more demanding criterion than the commonality inquiry under Rule 23(a), the mere existence of individualized defenses does not preclude a finding of predominance, so long as a sufficient constellation of common issues binds class members together." *Murphy v. LaJaunie*, No. 13 Civ. 6503, 2015 WL 4528140, at *6 (S.D.N.Y. July 24, 2015) (internal quotation marks and citations omitted).

The predominance requirement is satisfied here. District courts "have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices." *Id*. at *7 (collecting cases). Plaintiffs challenge the River Café's commonly applied employment policies and practices. *See* Pl. Class Cert. Mem. 13-21; Pl. Class Cert. Reply Mem. 13-14, ECF No. 94. As for the proposed class, the issues of whether the River Café's tip pool was lawful, and whether Plaintiffs were paid for all hours worked, predominate over all individualized inquiries. And, with respect to the proposed subclass, the issue of whether Defendants violated New

York's minimum wage and overtime law requirements by taking the tip credit predominates.

"Moreover, the fact that each class member's damages may vary is not relevant to the predominance inquiry, because damages calculations merely entail the application of simple mathematical computations that are consistent with the theories of liability." *Murphy*, 2015 WL 4528140, at *7; *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) ("*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance."); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (finding that the damages calculations for tips that were allegedly unlawfully retained and distributed was a "straightforward, mechanical process"). Here, to calculate damages if Defendants' liability is proven, "the total amount distributed to the tip ineligible employees could be tallied and redistributed, based on Defendants' point system, to the individuals who were lawfully in the tip pool." Pl. Class Cert. Mem. 31.  With respect to the claim for unpaid time, "calculating the wage damages for that time will follow the well-settled framework of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), because Defendants [purportedly] did not record [t]ipped [e]mployees' hours worked." Pl. Class Cert. Reply Mem. 17.  Finally, the tip credit damages owed to the subclass can be calculated by multiplying "the tip credit generally taken" by "each hour that [t]ipped [e]mployees worked." *Id.*

Defendants argue that, if the case proceeds as a class action, they will be "deprived of their right to assert . . . individual defenses"—including that "at least some Plaintiffs and putative [c]lass [m]embers may not be tip eligible," and "at least some putative [c]lass [m]embers consented to the inclusion of the maître d[']s, expediters, and floaters." Def. Opp. Mem. 25.

But, although a court evaluating "whether a movant has satisfied the requirements of Rule 23(b)(3) must examine both the claims and the defenses, the mere fact that a defense may arise and affect different class members differently does not compel a finding that individual issues predominate over common ones." *Flores*, 284 F.R.D. at 130 (internal quotation marks and citation omitted, and alterations accepted). The relevant inquiry is "whether the common issues will predominate over the individual questions raised by that defense." *Id.* (internal quotation marks and citation omitted). And, here, the Court finds that common questions of liability predominate.

      b.  Superiority—Rule 23(b)(3)

     The final question to be addressed under Rule 23(b)(3) is whether the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some potential class members are currently employed by the defendants. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (citations omitted) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually. . . . In addition, since some class members are still [defendants'] employees . . . , class members may fear reprisal and would not be inclined to pursue individual claims."). Defendants' argument that "judicial economy would not be served by permitting this matter to be litigated as a class action" because "determining damages would be nearly impossible to manage," Def. Opp. 27, is unavailing. *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (holding that the proposed class action will "achieve economies of time,

11

effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results" (internal quotation marks and citation omitted)); *Damassia*, 250 F.R.D. at 164 (holding that FLSA and NYLL class claims should be tried together "because it allows for a more cost-efficient and fair litigation of common disputes"). Therefore, a class action is the superior method of resolving this case.

Because the Rule 23(a) and Rule 23(b)(3) requirements have been met, the class certification motion is GRANTED.

3.   Appointment of Class Counsel—Rule 23(g)

Federal Rule of Civil Procedure 23(g)(1) states that, "unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Rule 23(g) directs courts to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs have retained as counsel Joseph & Kirschenbaum LLP, which has already identified and investigated potential claims in this action. Plaintiffs' counsel is qualified and experienced in class action law and wage-and-employment litigation. *See* Nussbaum Decl. ¶¶ 12, 14-20. Counsel is also willing and able to commit the necessary resources to represent the class and subclass. *Id*. at ¶ 21. Defendants do not challenge these assertions.

Thus, the Court finds that Joseph & Kirschenbaum LLP satisfies Rule 23(g)'s prerequisites and APPOINTS it as class counsel.

4.   Notice—Rule 23(c)(2)

Plaintiffs have submitted a proposed notice. Nussbaum Decl. Ex. A, ECF No. 80-1; *see*

12

*also* Pl. Class Cert. Mem. 35.  Defendants request a revision to the proposed notice, as well as "the opportunity to include a short statement of [Defendants'] position on the litigation."  Def. Opp. Mem. 28-29.

The Court directs the parties to meet and confer on the form of the notice and the manner of its dissemination, as well as the terms of the production of the names and contact information of class and subclass members.  *See Flores*, 284 F.R.D. at 132.  By **October 12, 2015**, the parties shall submit a joint proposal—including a proposed notice, procedures for its dissemination, and terms for the production of class and subclass members' information—for Court approval.

II.    Partial Summary Judgment

A.  Summary Judgment Standard

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted).  "In assessing the record to determine whether there is [such] a genuine issue to be tried, [the court is] required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

On a summary judgment motion, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Where that burden is carried, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson*, 477 U.S. at 249). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

B. Tip Sharing Standard

The FLSA and the NYLL require an employer to pay its employees at least minimum wage. 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). Both statutes, however, also "permit an employer to pay a tipped [employee] a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Inclan v. New York Hosp. Grp., Inc.*, No. 12 Civ. 4498, 2015 WL 1399599, at *3 (S.D.N.Y. Mar. 26, 2015) (citing 29 U.S.C. §§ 203(m), 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3(b); *id.* § 137-1.5 (repealed eff. Jan. 1, 2011)). This allowance is known as a "tip credit."

The FLSA provides that "an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not 'customarily and regularly receive tips.'" *Shahriar*, 659 F.3d at 240 (quoting 29 U.S.C. § 203(m)). "Thus, an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." *Id.* "When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than '*de minimis*' interaction with customers as a part of his employment." *Chhab v. Darden Rests., Inc.*, No. 11

14

Civ. 8345, 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013).  And, when deciding whether a manager is tip-ineligible, courts must "examine the economic reality of the employment relationship to determine whether [the manager is a] statutory employer[]." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 110 (2d Cir. 2012).  This inquiry requires courts to assess the totality of the circumstances and consider "whether the alleged [manager] (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks and citation omitted).  "[T]he overarching concern is whether the alleged [manager] possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Id.* (citations omitted).

The NYLL also "bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service—*i.e.*, employees who are not 'busboys or similar employees' and employees who are managers or 'agents' of the employer." *Shahriar*, 659 F.3d at 240 (quoting NYLL § 196-d) (brackets omitted); *see also Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471-72 (2013) (defining the term "similar employee," as used in § 196-d, to mean "employees who . . . are ordinarily engaged in personal customer service").[4]  The NYLL standard for evaluating a non-manager's tip eligibility is similar to the FLSA standard.  *See Shahriar*, 659 F.3d at 246.  But, with respect to managers, "[m]eaningful authority, not final authority, [is] the standard" under the NYLL.  *Barenboim*, 21 N.Y.3d at 473.  In other words,

---

[4] Section 196-d states, in relevant part, that "[n]o employer or his agent . . . or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee," but that "[n]othing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee."  N.Y. Lab. Law § 196-d.

employees with "meaningful or significant authority or control over subordinates" are ineligible to share in tips. *Id.* Indicators of meaningful authority include: (1) "the ability to discipline subordinates"; (2) the ability to "assist in performance evaluations"; (3) the ability to "participate in the process of hiring or terminating employees"; and (4) "having input in the creation of employee work schedules." *Id.*

Because 29 U.S.C. § 203(m) and NYLL § 196-d bar similar kinds of tipping practices, the Court will analyze the FLSA and NYLL claims conjunctively. *See Inclan*, 2015 WL 1399599, at *16; *see also Shahriar*, 659 F.3d at 246 (noting that "the FLSA and the NYLL use a similar standard for [determining tip eligible employees]"). Indeed, any differences between the two standards would be immaterial to the facts of this case. *See Schear*, 297 F.R.D. at 134.

C. Application

Defendants move for summary judgment on Plaintiffs' claim that Defendants violated the FLSA and the NYLL by permitting maître d's to participate in the River Café's tip pool. The primary maître d's who worked at the restaurant during the liability period were Javier Rodriguez, Patrick Goupit, Tom Hintz, and Josh Brown. Pl. Opp. Mem. 7, ECF No. 87; *see also* Def. Ex. 4 at 19, ECF No. 84-4. Defendants argue that the record evidence establishes that these maître d's are "no more than low-level supervisors who cannot be 'employers' within the meaning of the FLSA or [the] NYLL." Def. Summ. J. Mem. 5. Plaintiffs, on the other hand, contend that the maître d's "exercised significant control and authority" over the River Café's employees and, "[t]hus, they are managers." Pl. Opp. Mem. 7.

Based on the totality of the circumstances, the Court concludes that disputed issues of material fact exist as to whether the maître d's qualify as "employers / managers" under the FLSA and the NYLL and are, therefore, tip-ineligible.

1. Authority to Hire, Fire, Promote, and Demote Employees

First, the record evidence raises a triable issue as to whether the maître d's had the authority to hire, fire, promote, and demote employees. According to Defendants, Scott Stamford, the River Café's General Manager, "conducts all of the hiring, including interviewing candidates . . . and making the [ultimate] decision." Def 56.1. ¶ 68; *see also* Def. Ex. 5 ¶ 23, ECF No. 84-5; Def. Ex. 10 at 35, ECF No. 84-10. Defendants propound evidence showing that Stamford makes all promotion decisions, too. Def 56.1. ¶ 85; *see also* Def. Ex. 10 at 29. Defendants also claim that Stamford and O'Keeffe, the River Café's owner, "make all termination decisions for the front of house staff." Def 56.1. ¶¶ 3, 90; *see also* Def Ex. 4 at 24; Def. Ex. 5 ¶ 34. In addition, Defendants present evidence demonstrating that "[t]he maître d's are not permitted to hire" or "terminate" employees. Def 56.1. ¶¶ 69, 91; *see also* Def. Ex. 10 at 35-36; Def. Ex. 4 at 29.

By contrast, Plaintiffs' evidence supports that, in some instances, the maître d's interviewed and hired employees. Pl. 56.1 ¶¶ 68-69, ECF No. 88-18; *see, e.g.*, Pl. Ex. K at 2, ECF No. 88-11; Pl. Ex. N at 3, ECF No. 88-14; Pl. Ex. O at 3, ECF No. 88-15; Pl. Ex. Q at 3, ECF No. 88-17; *see also* Pl. Ex. A at 9-13, 25, ECF No. 88-1; Pl. Ex. B at 11-12, ECF No. 88-2; Def. Ex. 6 at 5-6, ECF No. 84-6; Def. Ex. A at 4-5, ECF No. 97-1.[5] In addition, the evidence propounded by Plaintiffs demonstrates that the maître d's had the authority to fire employees. Pl. 56.1 ¶¶ 89-91; *see, e.g.*, Pl. Ex. K at 3; Pl. Ex. L at 3, ECF No. 88-12; Pl. Ex. M at 4, ECF No. 88-13; Pl. Ex. N at 3; Pl. Ex. O at 3-4; *see also* Def. Ex. 11 at 7-8, ECF No. 84-11. Moreover, Plaintiffs' evidence establishes that the maître d's promoted and demoted the

---

[5] Even Stamford's deposition testimony, *see* Pl. Ex. F at 46-47, ECF No. 88-6, reflects that Plaintiffs have the ability to "participate in the process of hiring or terminating employees," *Barenboim* 21 N.Y.3d at 473.

employees. *See, e.g.*, Pl. Ex. A at 19, 25, 27; Pl. Ex. B at 14-15, 17; Pl. Ex. D at 19-20, ECF No. 88-4; Pl. Ex. O at 4.

Defendants attempt to undermine Plaintiffs' evidence by arguing that it is based solely on "personal knowledge." Def. Summ. J. Mem. 14-15. Not so. The Court finds that Plaintiffs have submitted ample competent evidence sufficient to create genuine disputes. *See, e.g.*, Pl. Ex. B at 12 ("[Rodriguez] was the one who told me to come to train. And he was the one who set my schedule. He said, [y]ou are going to start working."); Pl. Ex. K at 2 ("When I arrived in the restaurant the next day, [Rodriguez] made me perform one formal training exercise and then said, in English, that I was hired."); Pl. Ex. K at 3 ("Immediately after the argument, [Rodriguez] met me coming out of the locker room and told me that I was fired . . . . O'Keeffe . . . and Stamford were not present in the restaurant at the time I was fired by [Rodriguez]."); Pl. Ex. M at 3 ("The same day, I came in for an interview and met [Rodriguez]. I did not meet or speak to anyone else during the interview. . . . Prior to being hired, I never met or interacted with . . . Stamford."); Pl. Ex. Q at 3 ("I personally witnessed [Rodriguez] fire a waiter."); *cf. Jiao v. Shi Ya Chen*, No. 03 Civ. 0165, 2007 WL 4944767, at *2 n.3 (S.D.N.Y. Mar. 30, 2007) ("[T]he Court credits Jiao's testimony that he was hired on the spot by Chen upon his interview, which also supports the conclusion that Chen had full authority to hire Jiao."). In addition, even some of Defendants' evidence—such as Stamford's concession during his deposition that "it's possible that . . . Rodriguez took that decision to fire . . . Navarro"—shows that disputed issues of material fact exist.[6] Def. Ex. C at 18, ECF No. 97-3.

2.  Discipline of Employees

---

[6] In contrast to *Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164 (D.D.C. 2011), a case Defendants rely on, here Plaintiffs present: (1) more than their mere "perception[s]" of the maître d's' authority to hire, (2) record evidence showing that the maître d's "had the authority to discipline employees," and (3) more than a single incident of a maître d' terminating an employee. *Id.* at 176.

In addition, there is a genuine dispute as to whether the maître d's had the authority to discipline employees.  Although Defendants assert that Stamford makes disciplinary determinations, *see* Def 56.1. ¶ 93; Def. Ex. C at 8, Plaintiffs present sufficient evidence revealing that the maître d's also disciplined employees on numerous occasions, *see* Pl. 56.1. ¶ 93; Pl. Ex. A at 16-20; Pl. Ex. D at 13; Pl. Ex. E at 19-20, 26-27, ECF No. 88-5; Pl. Ex. L at 4; Pl. Ex. O at 3; Pl. Ex. Q at 4; Def. Ex. A at 9.

   3.   Supervision and Control of Employee Work Schedules and Conditions of Employment

   Another triable issue of fact that remains is whether the maître d's had supervisory authority and control over the employees' work schedules and conditions of employment. Defendants claim that the maître d's did not.  Def. Summ. J. Mem. 16.  Citing Stamford's testimony, Defendants contend "that the maître d[']s' ability to make scheduling decisions was limited and mainly clerical in nature." *Id.*; *see also* Def 56.1. ¶ 57.

   But Plaintiffs' evidence demonstrates otherwise.  Specifically, Plaintiffs' deposition testimony shows that the maître d's set employees' weekly schedules and approved or denied employees' requests to take time off for vacation or personal reasons.  *See* Pl. Ex. A at 26; Pl. Ex. B at 27-28; *see also* Pl. Ex. F at 30, ECF No. 88-6.  The maître d's did not have to seek Stamford's or O'Keeffe's consent before making these decisions.  *See* Pl. Ex. B at 27.  In addition, the maître d's determined which on-call employees were required to report for a shift, *see* Pl. Ex. A at 28-29, and had the authority to send employees home early or force them to work closing shifts, *see* Pl. Ex. D at 7; Pl. Ex. E at 18-19.  The maître d's also provided performance evaluations for the "front-of-the-house employees."  Def. Ex. 10 at 21.

   Moreover, based on Plaintiffs' evidence, the maître d's conducted pre-shift meetings for all service employees before most shifts.  *See, e.g.*, Pl. Ex. L at 4; Pl. Ex. Q at 4.  Stamford

admitted at his deposition that the maître d's generally "ran" these meetings, providing "instruction[s]" to the employees.  Pl. Ex. F at 25-26.  And, as Andon testified, in pre-shift meetings Rodriguez "would say": "This is my dining room, I run the rules.  And whoever doesn't like it, the door is open."  Pl. Ex. A at 26.

In addition, Stamford recognized that the maître d's are "the leaders of the staff" and "the supervisors of the dining room," testifying that the maître d's "generally run the room" and "[d]irect the waiters, captains, and bussers."  Pl. Ex. F at 18, 28, 37; *see also* Pl. Ex. A at 26 ("[The maître d'] did my scheduling.  He would approve my time off.  He will make me close.  He will make me work more lunches.  So all of that made me think that he was a manager."); Pl. Ex. C at 3-4, ECF No. 88-3 ("[Stamford] told me . . . that [Rodriguez] is the boss. . . . [Rodriguez] is the one who is going to manage . . . . [t]he schedule, the times that I am working, and what position, [what] I am going to perform, and also, the style in which he wanted us to work."); Def. Ex. 6 at 10 ("[Rodriguez] was the one giving us orders."); Def. Ex. 14 at 2, ECF No. 84-14 (listing "Javier Rodriguez" as employee's "supervisor" in the River Café's "new hire packet").  Finally, Plaintiffs submit evidence showing that the maître d's had custody of a "manager card," which they used to "comp" or void items on guests' checks.[7]  Pl. Ex. E at 8.

In short, the Court concludes that these issues must be resolved at trial.[8]  *See Encalada v. SDNY 19 Mad Park, LLC*, No. 13 Civ. 1926 (S.D.N.Y Nov. 6, 2014), ECF No. 76 at 9-10

---

[7] In the "case of an emergency," captains were also allowed to use the card.  Pl. Ex. E at 9.

[8] Defendants assert that the maître d's "do not determine or set the rate and method of Plaintiffs' payment," nor "maintain employment records."  Def. Summ. J. Mem. 17.  In support, Defendants submit testimony from Brendan McGinn, who "performs the payroll for front-of-house employees at the River Café."  Def. 56.1 ¶ 65; *see also* Def. Ex. 12, ECF No. 84-12.  Defendants also point to the fact that Fonseca testified that Stamford gave him the 2012 Notice and Acknowledgment of Pay Rate and Payday, which Fonseca signed and returned to Stamford.  Def 56.1. ¶¶ 157-58.  Nonetheless, Plaintiffs present evidence that calls into question Defendants' claim that the maître d's had nothing to do with employees' payment or records.  Specifically, Andon testified that when new employees had issues with getting paid, they reached out to Rodriguez.  *See* Pl. Ex. A at 23-25.  Moreover, Rodriguez "established a system" for tip shares.  *Id.* at 24.  In any event, these factors—which are not even part of the *Barenboim* test—are

(determining, after a bench trial, that the maître d' "was not eligible for the tips he received under the" NYLL because the maître d' "frequently interviewed new employees[,] . . . frequently disciplined and/or fired existing employees[,] . . . [a]nd . . . was responsible for creating the initial schedule each week"); *Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056, 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011) (denying summary judgment with respect to managers' tip eligibility status because "plaintiff . . . testified that [a manager] interviewed her and hired her on the spot without consulting anyone," and "had the authority to discipline employees and set employee schedules"). Accordingly, Defendants' motion for partial summary judgment is DENIED.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification is GRANTED. Defendants' motion for partial summary judgment is DENIED.

Joseph & Kirschenbaum LLP is APPOINTED as class counsel. Plaintiffs and Defendants shall meet and confer on the form of and the procedure for the dissemination of notice, as well as the terms of the production of class and subclass members' information. The parties shall submit a joint proposal for Court approval by **October 12, 2015**.

---

not dispositive. *See Herman*, 172 F.3d at 140 ("[T]here is no evidence that Portnoy was involved in maintaining employment records. But that this fourth factor is not met is not dispositive."); *Widjaja v. Kang Yue USA Corp.*, No. 09 Civ. 2089, 2011 WL 4460642, at *4 (E.D.N.Y. Sept. 26, 2011) ("The most significant factor in determining whether a person is an 'employer' is the power to hire, fire, or discipline other employees."); *In re Starbucks Emp. Gratuity Litig.*, 264 F.R.D. 67, 72 (S.D.N.Y. 2009) ("From this case law emerges the proposition that persons without the capacity to hire, fire[,] or discipline other employees . . . are not agents [of the employer].").

The Clerk of Court is directed to terminate the motions at ECF Nos. 69 and 81.

SO ORDERED.

Dated:  September 28, 2015
        New York, New York

ANALISA TORRES
United States District Judge