UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE FONSECA and REYES ANDON, on behalf
of themselves and others similarly situated,

        Plaintiffs,

      v.

DIRCKSEN & TALLEYRAND INC. d/b/a RIVER
CAFÉ and MICHAEL "BUZZY" O'KEEFE,

        Defendants.

ECF Case

13 CV 5124 (AT)(SN)

**<u>Oral Argument Requested</u>**

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON THEIR
NEW YORK LABOR LAW § 195(3) PAYSTUB CLAIM**

*Of Counsel:*
   Craig R. Benson
   Christine L. Hogan

**LITTLER MENDELSON**
A Professional Corporation
900 Third Avenue, 8th Floor
New York, New York 10022
212.583.9600

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

PAGE

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     FACTUAL BACKGROUND .................................................................................... 2

        A.      The Pre-2011 Paystub .................................................................................. 2

        B.      Notice of the Tip Credit .............................................................................. 3

III.    ARGUMENT ............................................................................................................ 5

        A.      Standard of Review ...................................................................................... 5

        B.      The Purpose of NYLL § 195(3) and its Concomitant Regulation, 12
                N.Y.C.R.R. § 137-2.2, Is Not to Provide Notice of the Tip Credit and the
                Loss of the Tip Credit Is Not an Available Remedy ............................... 5

        C.      The River Café's Pre-2011 Paystubs Are Compliant with NYLL § 195(3)
                and 12 N.Y.C.R.R. § 137-2.2 ..................................................................... 12

IV.     CONCLUSION ...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................5

*Barenboim v. Starbucks Corp.*,
    21 N.Y.3d 460 (2013) ............................................................................................7

*Carvente-Avila v. Chaya Mushkah Rest.*,
    2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016) ............................................... passim

*Cole v. Mandell Food Stores, Inc.*,
    93 N.Y.2d 34, 710 N.E.2d 244, 687 N.Y.S.2d 598 (1999) ...................................14

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    788 F. Supp. 2d 253 (S.D.N.Y. 2011) ........................................................... passim

*Hernandez v. BCI Coca-Cola Bottling Co.*,
    2012 U.S. Dist. LEXIS 55301 (C.D. Cal. Apr. 12, 2012), *aff'd*,
    554 Fed. App'x 661 (9th Cir. 2014).   ...................................................................14

*Howard v. Wyman*,
    28 N.Y.2d 434 (1971) .......................................................................................7, 10

*Kilgore v. Outback Steakhouse of Florida, Inc.*,
    160 F.3d 294 (6th Cir.1998) ................................................................................11

*Lawson v. FMR LLC*,
    134 S. Ct. 1158 (2014) .........................................................................................14

*Martin v. Tango's Rest., Inc.*,
    969 F.2d 1319 (1st Cir.1992) ...............................................................................11

*Matter of Mounting Finishing Co. v. McGoldrick*,
    294 N.Y. 104, 60 N.E.2d 825 (1945) ...................................................................10

*Morgan v. United Retail, Inc.*,
    186 Cal. App. 4th 1136 (Cal. Ct. App. 2010) ......................................................14

*Overton v. N.Y. State Div. of Military & Naval Affairs*,
    373 F.3d 83 (2d Cir. 2004).....................................................................................5

*Reich v. Chez Robert, Inc.*,
    28 F.3d 401 (3d Cir.1994) ....................................................................................11

*Salinas v. Starjem Rest. Corp.*,
   123 F. Supp. 3d 442 (S.D.N.Y. 2015) (Torres, J.) ........................................................ passim

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*,
   391 F.3d 77 (2d Cir. 2004) ................................................................................................5

*Sista v. CDC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006) ..............................................................................................5

*State v. GTE Valeron Corp.*,
   553 N.Y.S.2d 555 (1990) ...................................................................................................7

**STATUTES & REGULATIONS**

New York Labor Law

   § 195(3) .......................................................................................................................... passim

   § 195(1) ................................................................................................................................8

12 N.Y.C.R.R. § 137-2.2 ....................................................................................................... passim

12 N.Y.C.R.R. § 146-1.3 .................................................................................................6, 7, 8, 9

12 N.Y.C.R.R. § 146-2.2 ....................................................................................................6, 8, 9

12 N.Y.C.R.R. § 146-2.3 ..........................................................................................................7, 8

Federal Rule of Civil Procedure 56(c) .......................................................................................5

Local Rule 56.1 ................................................................................................................... passim

**OTHER AUTHORITIES**

March 4, 2015 Opinion Letter from Pico Ben-Amotz, General Counsel to the NYDOL, to
   the Hon. Joseph D. Morelle, Majority Leader of the New York State Assembly ........... passim

Defendants Dircksen & Talleyrand, Inc. d/b/a the River Café and Michael O'Keeffe ("Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment on their New York Labor Law ("NYLL") § 195(3) claims.

# I.
## PRELIMINARY STATEMENT

The basis for Plaintiffs' motion involves alleged technical notice violations where Plaintiffs have not been harmed *in any manner whatsoever* by the alleged wrongdoing. From July 23, 2007 to January 1, 2011, Plaintiffs claim that the paystub they received each week violated NYLL § 195(3) and 12 N.Y.C.R.R. § 137-2.2 by failing to include explicit reference to the tip credit. For this, Plaintiffs believe Defendants should lose the ability to take the tip credit and, consequently, suffer a multi-million dollar judgment. According to a March 4, 2015 opinion letter from the New York Department of Labor ("Opinion Letter"), however – which must be given deference by this Court – the loss of the tip credit is simply not the appropriate remedy for pay notice violations such as these.

Plaintiffs desperately attempt to avoid application of the Opinion Letter by making such arguments as – it is somehow not usable because they "have searched in vain for a public version of the letter to verify the copy submitted by Defendants with their pre-motion letter." Incredibly, the very case in which the Southern District held that courts should give deference to the Opinion Letter and deny the loss of the tip credit as a remedy for 12 N.Y.C.R.R. § 137-2.2 violations – *Carvente-Avila v. Chaya Mushkah Rest.*, 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016) – was a case where **Plaintiffs' counsel, Joseph & Kirschenbaum LLP, submitted the Opinion Letter on behalf of its client (a restaurant) as persuasive authority for the Court's consideration**.

The Court should not be swayed by this and other arguments put forth by Plaintiffs. For the reasons that will be explained below, there is no justification for providing the extraordinary

relief Plaintiffs have requested and their motion should be denied in its entirety.

## II.
## FACTUAL BACKGROUND

**A.      The Pre-2011 Paystub**

Before 2011, the River Café utilized the payroll company ADP to issue paychecks and paystubs to its employees (the "ADP Period").  (56.1 Counterstatement, at ¶ 1).[1]  The parties have stipulated to the format of the paystub used during the ADP Period.  (*Id.* ¶ 2).  The wage statement of Jorge Fonseca for the period ending August 28, 2011 is representative of that format.  (*Id.*).  The following is a screenshot of the pertinent section of Plaintiff Fonseca's paystub (with red boxes added for the Court's convenience):

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.0000 | 26.00 | 130.00 | 6,384.35 |
| Alacar | | | 723.00 | |
| D | 7.2500 | 1.00 | 7.25 | |
| Meals | | | 9.00 | |
| Overtime | | | | 1,673.30 |
| Gross Pay | | | $869.25 | 50,338.40 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -58.05 | 3,582.57 |
| | Social Security Tax | -36.13 | 2,094.49 |
| | Medicare Tax | -12.47 | 723.10 |
| | NY State Income Tax | -6.30 | 474.71 |
| | New York Cit Income Tax | -23.70 | 1,611.17 |
| | NY SUI/SDI Tax | -0.60 | 21.00 |
| | Other | | |
| | Alacar | -723.00 | 41,354.00 |
| | Meals | -9.00* | 469.50 |
| | 8 | -58.59* | |
| | Adjustment | | |
| | Q | +58.59 | |
| | Net Pay | $0.00 | |

(*Id.* ¶ 3 (citing to Hogan Decl. Ex. 2, at ¶ 4 & Ex. 2.A)).

---

[1] The references made to the 56.1 Counterstatement throughout this brief are references to the section of the 56.1 Counterstatement entitled "Defendants' Statement of Additional Material Facts."

In the Fonseca Paystub, the abbreviations "8" and "Q" represent the added and deducted tip credit amount – in this case, $58.59.  (*Id.* ¶ 4).  However, the total tip credit amount for that week should have been $58.50.  (*Id.*).  The $58.59 listed on the paystub as the total tip credit amount for that week, $0.09 difference, is a computational error.  (*Id.* ¶ 5).  The tip credit amounts were calculated by ADP using the data sent to them by the River Café.  (*Id.* ¶ 6).  The inconsistent computational errors were made by ADP, not the River Café.  (*Id.*).

In some ADP payroll records, there are instances where the tip credit appears to have been computed incorrectly.  (*Id.* ¶ 7).  In other ADP payroll records, there are instances where the tip credit was computed correctly.  (*Id.*).  Regardless, Plaintiffs and Class Members were all paid more than enough in tips each week to meet or exceed the applicable regular minimum wage. (*Id.* ¶ 8).

**B.      Notice of the Tip Credit**

Government posters, such as the New York Department of Labor's minimum wage poster, are located on two separate bulletin boards in the River Café.  (*Id.* ¶ 9).  Before Hurricane Sandy in 2012, both bulletin boards were located in an alcove that connected the dining room to the kitchen.  (*Id.* ¶ 10).  The first bulletin board was located above the coffee station, where tipped employees make coffee for dining room guests and for themselves.  (*Id.* ¶ 11).  The second bulletin board was located above the work station, where tipped employees accessed the point-of-sale ("POS") system and punched in and out.  (The POS system is where tipped employees begin guest checks, place orders, and process credit card payments.  (*Id.* ¶ 12).

Every employee, including tipped employees, had regular access to the alcove, where the two bulletin boards were located.  In fact, tipped employees accessed the area multiple times a day.   (*Id.* ¶ 13).  Moreover, tipped employees were expected to review the bulletin boards

because they contained important information about their job duties.  (*Id.* ¶ 14).  Specifically, the bulletin boards had copies of the work schedules, notices of staff meetings, the wine list, and general announcements related to their jobs.  (*Id.*).  There were always copies of the New York Department of Labor's minimum wage poster on both bulletin boards, prominently displayed for all tipped employees to see and read at all times.  (*Id.* ¶ 15).

Throughout 2007 until 2009, the New York minimum wage poster (effective date January 1, 2007) with the $7.15 regular minimum wage amount, was posted on both employee bulletin boards (the "$7.15 Minimum Wage Poster").  (*Id.* ¶ 16).  The $7.15 Minimum Wage Poster was posted on both bulletin boards in 2007, until General Manager Scott Stamford replaced it with a newly released version of the New York Department of Labor's minimum wage poster later in the year. (*Id.* ¶ 17).  This newly released version of the minimum wage poster (effective date July 24, 2009) listed a regular minimum wage of $7.25 an hour (the "$7.25 Minimum Wage Poster").  (*Id.* ¶ 18).  It was also posted on both employee bulletin boards, and it replaced the $7.15 Minimum Wage Poster.  (*Id.*).  The $7.25 Minimum Wage Poster was posted on both bulletin boards from when Mr. Stamford took down the $7.15 Minimum Wage Poster until he updated it with a newly released poster from the New York Department of Labor in 2013.  (*Id.* ¶ 19).

Both the $7.15 Minimum Wage Poster and the $7.25 Minimum Wage Poster have a section that relates to the tip credit.  (*Id.* ¶ 20).  Both posters state:

> **Tips**
> A specific allowance may be credited toward the minimum wage for tips earned.

(*Id.*).  These posters, which were prominently displayed at all times, gave all employees notice of the tip credit.  (*Id.* ¶ 21).  Moreover, both named Plaintiff Andon and opt-in Plaintiff Geoffrey

Schuppert testified that they had actual knowledge of the tip credit.  (*Id.* ¶¶ 22-24).

## III.
## ARGUMENT

### A.     Standard Of Review

Rule 56(c) of the Federal Rules of Civil Procedure requires summary judgment if the evidence demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [fact finder] could return a verdict for the nonmoving party.'"  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

As demonstrated below, Plaintiffs are not entitled to summary judgment on their NYLL § 195(3) claim or to the loss of tip credit as a remedy.

### B.     The Purpose of NYLL § 195(3) and its Concomitant Regulation, 12 N.Y.C.R.R. § 137-2.2, Is Not to Provide Notice of the Tip Credit and the Loss of the Tip Credit Is Not an Available Remedy

Prior to 2011, there was no state statute or regulation that even arguably pre-conditioned the receipt of the tip credit on any specific notice.  Relying on limited case law, Plaintiffs nonetheless argue that one of the preconditions "was that employers provide notice of the tip credit by furnishing to the employee 'a statement with every payment of wages listing . . .

allowances . . . claimed as part of the minimum wage.'"  (Pl. Br. at 3-4 (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) (Torres, J.)).  They rely, in large part, on this Court's decision in the *Salinas* case.  As Defendants will demonstrate, however, this Court did not, at the time of its decision in that case, have the benefit of the New York State Department of Labor's ("NYDOL") interpretation of its pay notice regulations, which was only issued after the *Salinas* decision was rendered.

On March 4, 2015, Pico Ben-Amotz, in his capacity as General Counsel to the NYDOL, wrote a letter to the Hon. Joseph D. Morelle, Majority Leader of the New York State Assembly ("Opinion Letter") and provided guidance regarding the NYDOL's position on this issue.[2]  In that letter, General Counsel Ben-Amotz addressed the "intersection of the tip credit and notice of pay rules," and specifically, the regulation that requires issuance of a wage theft prevention act notice upon hire, 12 N.Y.C.R.R. § 146-2.2, and the tip credit notice regulation, 12 N.Y.C.R.R. § 146-1.3, which went into effect in January 2011.  *See Opinion Letter*, at 1.  Section 146-1.3 provides that an employer may only take the tip credit if the employee "receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part."  *Id.*

Specifically, Mr. Ben-Amotz was responding to Majority Leader Morelle's inquiry as to whether, "as a precondition to claiming a tip credit . . . an employer [must] provide *written* notice of the tip credit rules."  *Id.* (emphasis added).  The Opinion Letter answered with a resounding and unambiguous: <u>no</u>.  The Opinion Letter reasoned:

> **DOL's interpretation of 12 NYCRR § 146-1.3 is compelled both by the plain language of the regulation and the need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices.**  If an employer can demonstrate compliance with the all of the other minimum wage requirements and that their employees

---

[2] The Opinion Letter is attached to the June 17, 2016 Declaration of Christine L. Hogan ("Hogan Decl."), at Ex. 5.

understood the manner in which the employer took the tip credit, there is no policy rationale to preclude the employer from claiming the tip credit simply because the employer did not provide written notice of the tip credit rules. Alternatively stated, written notice is not necessary to protect employees that have actual knowledge of the tip credit rules.

*Id.* at 2 (emphasis added).

Despite Plaintiffs' arguments to the contrary (Pl. Br. at 7-11), the Opinion Letter is entitled to deference and must be followed here.   In *Carvente-Avila v. Chaya Mushkah Rest.*, 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016), the court specifically relied upon the Opinion Letter to deny the plaintiffs' motion for reconsideration, where plaintiffs argued for loss of the tip credit as a remedy for violation of the wage theft prevention act notice and paystub requirements in NYLL §§ 195(1) & (3).   *See id.* at \*1 (emphasis added).   The court first laid out the applicable law on deference:

> New York courts have . . . consistently held that the NYDOL's "interpretation of a statute it is charged with enforcing is entitled to deference." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470-71 (2013); *see also State v. GTE Valeron Corp.*, 553 N.Y.S.2d 555, 557 (1990) ("Judicial deference should therefore be accorded the interpretation by the [New York] Department of Labor ..."). In fact, Barenboim involved the NYDOL's interpretation of a regulation under another provision under Section 146 of the New York Minimum Wage Order, 12 N.Y.C.R.R. §§ 146-2.14. *Id.* 21 N.Y.3d at 470-71. In addition, New York courts have held that "regulations by the agency responsible for [statutory] administration, if not irrational or unreasonable, should be upheld." *Howard v. Wyman*, 28 N.Y.2d 434, 438 (1971). **"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." *Id.***

*Id.* at \*2 (emphasis added).

Applying that law, the *Carvente-Avila* court held that there is a rational basis for the conclusions made in the Opinion Letter.   *Id.*   In fact, the Court pointed out three separate rational bases (which were also set forth in the Opinion Letter):

(1) the plain language of the tip credit notice regulation, Section 146-1.3, does not require *written* notice,

(2) there was a policy reason for not allowing loss of the tip credit as a remedy for the pay notice regulations – because of the "'need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices'"; and

(3) Section 146-2.2's penalties already provide "strong incentive" to comply with the pay notice regulations.

*Id.* at *2-3.  Accordingly, the court held that deference was required and the loss of the tip credit was not an available remedy.  The Court should make the same finding here.

In order to avoid losing their desired remedy – loss of the tip credit – Plaintiffs first argue that the Opinion Letter "does not interpret § 137-2.2, but rather its successor regulations," N.Y.C.R.R. §§ 146-1.3 and 146-2.2.  (Pl. Br. at 8).  The key word here is "successor."  Upon examination of 12 N.Y.C.R.R. § 137-2.2 and its successor regulation, 12 N.Y.C.R.R. § 146-2.3, however, it is clear that there has been no meaningful change in the language:

| 12  N.Y.C.R.R. § 137-2.2<br>(effective until Jan. 1, 2011) | N.Y.C.R.R. § 146-2.3<br>(effective Jan. 1, 2011) |
| --- | --- |
| Every employee must "furnish to each employee a statement with every payment of wages listing . . . allowances, if any, claimed as part of the minimum wage . . . ." | "Every employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages. The pay stub must list . . . credits claimed (for tips, meals and lodging) if any . . . ." |

Accordingly, there is simply no justification for Plaintiffs' desperate argument that the interpretation contained the Opinion Letter should not apply to 12  N.Y.C.R.R. § 137-2.2 as well.

Moreover, it is of no moment that the Opinion Letter was addressing the pay notice requirements contained in NYLL § 195(1) and not the pay notice requirements contained in NYLL § 195(3).  The Opinion Letter was addressing the broad question of whether "an employer that fails to provide written notice of the tip credit rules may nonetheless claim a tip credit if the employer can demonstrate compliance with the all of the minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."  *See Opinion*

*Letter*, at 1.   The Opinion Letter's rationale has to apply equally to both statutes, or else the previously quoted passage would be rendered meaningless.   Likewise, the underlying policy rationale behind the Opinion Letter – the "need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices," would be flouted if loss of the tip credit was to result due to violation of Section 137-2.2.   Finally, the *Carvente-Avila* court applied the Opinion Letter to paystub notice violations as well.   2016 WL 3221141, at *1-2.   There is simply no basis for an argument that loss of the tip credit results from a violation of the annual pay notice regulation, but not the paystub regulation.

Second, Plaintiffs argue that since other courts, post-March 2015, have ruled "consistent with *Salinas*, that failure to comply with the § 137-2.2 wage statement requirements invalidates an employer's pre-2011 use of the tip credit," the Opinion Letter has had no impact on the state of the law.   (Pl. Br. at 9).   None of these courts, however, reviewed the Opinion Letter in conjunction with their decisions, and thus were neither given the benefit of the NYDOL's interpretation of its own regulations, nor cabined by the applicable level of deference.   Such decisions are not precedential here.

Third, Plaintiffs argue that since this Court already "found for the period post-2011 §§ 146-1.3 and 146-2.2 of the regulations mean exactly what they say," i.e., that "an employer may not take a tip credit unless the employer has given the employee written notice," the Court should not afford deference the Opinion Letter.   (Pl. Br. at 9).   As an initial manner, this Court in *Salinas* did not, in fact, hold that "the regulations mean exactly what they say."   The Court simply applied the then-current state of the law on the loss of the tip credit.   *Salinas*, 123 F. Supp. 3d at 466-67.   Moreover, in arguing that *their* interpretation of Section 137-2.2 is the

correct one, Plaintiffs misunderstand the concept of "deference." This Court is cabined by rule of law that "'construction given statutes and regulations by the agency responsible for their administration, **if not irrational or unreasonable**, should be upheld." *Howard v. Wyman*, 28 N.Y.2d 434, 438, 271 N.E.2d 528, 322 N.Y.S.2d 683 (1971) (quoting *Matter of Mounting Finishing Co. v. McGoldrick*, 294 N.Y. 104, 108, 60 N.E.2d 825 (1945)) (emphasis added). As explained by the Court in *Carvente-Avila* and listed above, there are not one but <u>three</u> separate rational bases for the DOL's interpretation of its own regulation.

Fourth, Plaintiffs claim that the Opinion Letter is not public and thus cannot be relied upon. (Pl. Br. at 10-11). Implying that the Opinion Letter is somehow not usable, Plaintiffs' counsel states that they "have searched in vain for a public version of the letter to verify the copy submitted by Defendants with their pre-motion letter." (*Id.*). This position is curious and, quite frankly, disingenuous. Plaintiffs' counsel, Maimon Kirschenbaum, of Joseph & Kirschenbaum LLP, **was defense counsel in *Carvente-Avila v. Chaya Mushkah Restaurant* –** the very case in which the court relied upon the Opinion Letter to deny the plaintiffs the loss of the tip credit for pay notice violations. They actually submitted the Opinion Letter to the court as persuasive authority for its consideration. In this case, they now challenge the very same letter, which, in that case, saved their client from losing the tip credit (and, presumably, a large amount of money). It bears repeating – Plaintiff's counsel "searched in vain for a public version of the letter to verify the copy submitted by Defendants with their pre-motion letter," yet filed **the very same letter** with the *Carvente-Avila* court **less than four months ago**. This conduct speaks for itself. Bottom line, the letter is entitled to deference and Plaintiffs cannot make any serious argument to the contrary.

Finally, as Plaintiffs' last argument, they claim that "the record is entirely devoid of

evidence" that the Subclass had actual notice of the tip credit.  (Pl. Br. at 11).  As an initial matter, this issue is not properly before the Court on summary judgment.  The only issue here is whether Defendants violated Section 137-2.2 – which, as explained by the Opinion Letter, has nothing to do with notice or loss of the tip credit.  Since Plaintiffs have only moved for summary judgment on their Section 137-2.2 claim, the Court should not, at this stage, be considering whether the Subclass received sufficient notice of the tip credit.

More importantly, however, is that during the ADP Period, there is evidence that the Subclass did receive notice of the tip credit though the New York State minimum wage poster.  The poster was placed in a prominent area of the restaurant where all members of the Subclass had access.  Moreover, Plaintiffs Andon and Schuppert affirmatively testified that they received notice of the tip credit.  As explained below, this record evidence is sufficient to prove that the Subclass did, in fact, have notice of the tip credit.

Plaintiffs argue that *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011), and the Court's opinion in *Salinas* support the proposition that "such generic posters cannot satisfy Defendants' burden of providing notice of the tip credit."  (Pl. Br. at 12).  This is not true.  In *Copantitla*, the court specifically stated that "a poster constitutes sufficient notice" when "'the content of the poster is otherwise sufficient and it is prominently displayed.'" *Id.* at 289.  Here, the NY minimum wage poster *was* prominently displayed and specifically stated: "Tips: A specific allowance may be credited toward the minimum wage for tips earned." This is sufficient notice of the tip credit because it provides "'notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.'"  *Id.* (citing *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir.1992); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir.1998); *Reich v. Chez*

*Robert, Inc.*, 28 F.3d 401, 403 (3d Cir.1994)).  This language was deliberately drafted by the New York Department of Labor and included on the poster to inform employees of the tip credit. Plaintiffs cannot seriously argue that the language drafted by the agency *in charge of enforcing the laws at issue here* did not draft language that would pass muster.

The reason why the court in *Copantitla* – a case where there was multiple violations and the loss of the tip credit could be based on any number of different theories – found the poster there to be "generic" and unable to satisfy Defendant's burden is because there was no evidence in the record that the poster said anything about the tip credit – just that the poster "talks about minimum wage, the dates of the minimum wage, also states about jury duty, things of that nature." *Id.*  Similarly, in *Salinas*, this Court found that the poster was "generic" and unable to provide sufficient notice because the plaintiffs were not English-speaking and the poster only described "employee rights, payroll, hourly wages, sick pay, [and] sick day[s].'"  *Salinas,* 123 F. Supp. 3d at 461.  Such is not the case here, and, accordingly, these cases are distinguishable.

In sum, as explained by the Opinion Letter, Section 137-2.2 has nothing to do with the tip credit notice requirement and the loss of the tip credit is simply not available for violation of that regulation.  Regardless, Plaintiffs and the Subclass received actual notice of the tip credit through the prominently displayed minimum wage poster.

**C.    The River Café's Pre-2011 Paystubs Are Compliant with NYLL § 195(3) and 12
        N.Y.C.R.R. § 137-2.2**

In addition to the above arguments, a review of the paystubs in question shows that they did, in fact, provide sufficient notice.  Before January 1, 2011, Section 195(3) required that "[e]very employer . . . furnish each employee with a [wage] statement . . . listing gross wages, deductions and net wages."  NYLL § 195(3) (effective until April 9, 2011).  The applicable hospitality regulation interpreted this statute to mean that every employer had to "furnish to each

employee a statement with every payment of wages <u>listing</u> hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions, and net wages." 12 N.Y.C.R.R. § 137-2.2 (effective until Jan. 1, 2011) (emphasis added).

As the following screenshot of the paystub in effect until December 31, 2011 demonstrates, River Café met all the requirements of both Section 195(3) and 12 N.Y.C.R.R. § 137-2.2, as it existed during the pre-2011 time period:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.0000 | 26.00 | 130.00 | 6,384.35 |
| Alacar | | | 723.00 | |
| D | 7.2500 | 1.00 | 7.25 | |
| Meals | | | 9.00 | |
| Overtime | | | | 1,673.30 |
| Gross Pay | | | $869.25 | 50,338.40 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -58.05 | 3,582.57 |
| | Social Security Tax | -36.13 | 2,094.49 |
| | Medicare Tax | -12.47 | 723.10 |
| | NY State Income Tax | -6.30 | 474.71 |
| | New York Cit Income Tax | -23.70 | 1,611.17 |
| | NY SUI/SDI Tax | -0.60 | 21.00 |
| | **Other** | | |
| | Alacar | -723.00 | 41,354.00 |
| | Meals | -9.00* | 469.50 |
| | 8 | -58.59* | |
| | **Adjustment** | | |
| | Q | +58.59 | |
| | Net Pay | $0.00 | |

Here, Plaintiff Fonseca's rate of pay was $5.00, total hours were 26, gross pay was $869.25, total tip credit allowance was $58.59, net pay was $0.00, and various deductions were as stated. Since the paystub <u>explicitly</u> met the applicable requirements of both the statute and regulation, the Court should grant Defendants' motion for summary judgment on Plaintiffs' pre-January 1, 2011 NYLL § 195(3) claim.

Plaintiffs argue that the River Café's pre-2011 paystub does not provide *actual* notice to Subclass members that they were taking a tip credit against minimum wage – *i.e.*, that employees understood what everything on their paycheck meant. The regulation, however, explicitly only

requires that an employer list certain types of information, including deductions and allowances. That is what the River Café's pre-2011 paystub did.  In the screenshot above, + $58.59 was added to the gross pay and - $58.59 was taken away.  The allowances and deductions for the tip credit were "listed" within the meaning of the law.[3]

Moreover, Plaintiffs can easily ascertain the amount of the tip credit by performing simple math.  *See Hernandez v. BCI Coca-Cola Bottling Co.*, 2012 U.S. Dist. LEXIS 55301, at *20-22 (C.D. Cal. Apr. 12, 2012) (defendant's wage statements were in substantial compliance because plaintiffs could perform simple math to get the required information), *aff'd*, 554 Fed. App'x 661 (9th Cir. 2014).  For example, Fonseca's paystub list both the tipped minimum wage rate of $5.00 and the regular minimum wage rate of $7.25.  Simple math – *i.e.,* subtracting the tipped minimum wage from the regular minimum wage, both listed on the face of the paystub – provides the tip credit amount per hour.  *Accord Morgan v. United Retail, Inc.*, 186 Cal. App. 4th 1136, 1147 (Cal. Ct. App. 2010) (wage statements complied with state law where "employee could simply add together" figures on wage statement to arrive at information required by statute).

As explained in Point III.B above, notwithstanding what is contained on the paystub, compliance with Section 137-2.2 is not a prerequisite for taking the tip credit.  The Opinion Letter states: "If an employer can demonstrate compliance with the all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit, there is no policy rationale to preclude the employer from claiming the tip credit

---

[3] According to well settled rules of statutory interpretation, a court must apply the "ordinary meaning" of the words included in the statute.  *See Lawson v. FMR LLC*, 134 S. Ct. 1158, 1165-66 (2014).  *See also Cole v. Mandell Food Stores, Inc.*, 93 N.Y.2d 34, 710 N.E.2d 244, 246, 687 N.Y.S.2d 598 (1999) ("When . . .  a statute is clear and unambiguous, courts are obligated to construe the statute so as to give effect to the plain meaning of the words."). "The word "list" simply means "to set down together in a list; make a list of."  *See* "List," www.Dictionary.com (last visited June 15, 2016).

simply because the employer did not provide written notice of the tip credit rules." *Opinion Letter*, at 2. *A fortiori*, Section 137-2.2 cannot possibly require that employees reading a paystub receive actual notice of the tip credit through the listed information. Otherwise, the NYDOL in the Opinion Letter wouldn't be making such a distinction.

If the Court finds that 12 N.Y.C.R.R. § 137-2.2 somehow *does* require that each employee understand what every line item on the paystub means, then the Court must deny Plaintiffs' motion because it cannot decide this issue on the basis of the paystub alone. Plaintiffs have not provided record evidence to support their position that Subclass members did not understand the paystub. It is not enough for Plaintiffs to claim that "no reader of average intelligence could reasonably have been expected to piece that information together from the cryptic notations on the wage statement." (Pl. Br. at 5). If any of the Subclass Members had knowledge of what the line items on the paystub meant, then section 137-2.2 is satisfied under their interpretation of the regulation.

Moreover, if the Court finds that 12 N.Y.C.R.R. § 137-2.2 *does* require that the Subclass members understand what every line item on the paystub means, then Plaintiffs' motion for summary judgment is premature. On April 29, 2016, counsel for Defendants sent correspondence to Plaintiffs' counsel renewing Defendants' request to depose five opt-in plaintiffs. (Hogan Decl. ¶ 7). At first, Plaintiffs refused to produce additional plaintiffs for deposition. (*Id.* ¶ 8). However, upon meeting and conferring several times, Plaintiffs agreed to allow Defendants to depose five additional opt-in plaintiffs. (*Id.*). Unfortunately, the parties have not yet been able to schedule any of these depositions. (*Id.* ¶ 9). During those depositions, however, Defendants intend to question the opt-in plaintiffs regarding their understanding of the paystub (the NYLL 195(3) claim was only added to the complaint *after* the initial round of

depositions).  Only after these depositions are concluded would Plaintiffs' motion be ripe for decision.

Again, Plaintiffs' reliance on *Salinas* and *Copantitla* do not render a different result.  (Pl. Br. at 4-5).  In both cases, it is important to separate out the parts of the opinions that discuss federal requirements and the parts that discuss state law requirements, since Plaintiffs are only moving here for summary judgment on their pre-2011 *state* claims.  In *Salinas*, this Court stated that section 137-2.2 required an employer to "'furnish to [the] employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage."  123 F. Supp. 3d at 466.  The Court then held that defendants did not comply with section 137-2.2 because the paystub at issue only listed the amount of tips earned, not any allowances taken – a direct violation of section 137-2.2.  *Id.* at 467.  Actual notice of the tip credit was only discussed in the Court's discussion on FLSA requirements for taking the tip credit.  *Id.* at 466.  In *Copantitla*, the court similarly held that defendant had violated section 137-2.2 for the same reason – failure to list allowances in addition to tip-related income.  788 F. Supp. 2d at 290.  Like the *Salinas* court, the *Copantitla* court only discussed actual notice of the tip credit in its discussion on the FLSA.  *Id.* at 288-90.[4]

Finally, Plaintiffs argue that the fact that the tip credit may have been calculated incorrectly in the Fonseca paystub is cause for holding that Defendants violated section 137-2.2. Plaintiffs, however, do not support their argument with any case law, and, in fact, such an interpretation is not warranted by a plain reading of the regulation, which only requires that an employer "list" certain types of information, including "allowances" – which, as discussed previously, the River Café did.

---

[4] The holdings in these cases as they pertain to the loss of the tip credit as a remedy for violating of the pay notice statutes – along with all the other cases cited in Point II.A of Plaintiffs' moving brief – are no longer good law, due to the New York Department of Labor's Opinion Letter.  *See supra* Point III.B.

Moreover, the parties only stipulated that the *format* of the Fonseca paystub was the same for the entire Subclass; not that the information contained therein was as well. Inconsistent clerical errors in the calculation of the tip credit appear in the River Café's records. Sometimes, the entries for "Q" and "8" – which represent the allowance and deduction for the tip credit – display the properly calculated tip credit amount. Sometimes, due to ADP's computation error, the entries do not. Regardless, these inconsistent computation errors are not prohibited by Section 137-2.2 and Plaintiffs and Subclass Members were all paid more than enough in tips each week to meet or exceed the applicable regular minimum wage, making these errors immaterial.

For all the above reasons, Defendants have not violated Section 137-2.2 and Plaintiffs' motion for summary judgment should be denied.

## IV.
## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' motion for summary judgment in its entirety, grant summary judgment in favor of Defendants on Plaintiffs' individual and class NYLL § 195(3) claim, and order such other and further relief as the Court deems just and proper.

Date:   June 17, 2016
        New York, New York

s/Christine Hogan

Craig R. Benson, Esq.
Christine L. Hogan, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022
(212) 583-9600
cbenson@littler.com
clhogan@littler.com

*Attorneys for Defendants*